## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRIT OF PUERTO RICO

| | | |
|---|---|---|
| Aneury Báez Eliza | * | |
| Demandante | * | |
| | * | Civil No. 20-cv-1219(ADC) |
| v. | * | Demandante Solicita Juicio por Jurado |
| Departamento de la Familia, | * | |
| Evelyn Velázquez Vega, | | |
| Jane Doe y John Doe | * | |
| Demandados | * | |
| _____ | * | |

RECEIVED AND FILED
2020 MAY -8 PM 3:43
CLERK'S OFFICE
U.S. DISTRICT COURT

### DEMANDA (COMPLAINT)

Al Honorable Tribunal:

Se presenta el Demandante por Derecho Propio y ante este Honorable Tribunal expone alega y soliicta:

### I.

### Jurisdicción

1. Este Honorable Tribunal tiene jurisdicción sobre este asunto de conformidad con 28 U.S.C 1331, 1334 ya que involucra planteamientos Federales sobre el Título I y el Titulo II de la Ley de Estadounidenses con Discapacidades de 1990 (ADA), 42 U.S.C 12101 et seq., y violaciones al título 42 USC ¶ 1983.

2. Esto también comprende una acción por Reclamaciones Pendientes por Leyes Locales, tales como: Articulo 1802 y 1803  del Código Civil de Puerto Rico; Ley

115 del 20 de diciembre de 1991 (estatuto local contra represalias); Ley Núm. 80 de 30 de mayo de 1976 (despido injustificado); Ley 44 del 2 de julio de 1985 (Para Prohibir el Discrimen Contra las Personas con Impedimentos Físicos, Mentales o Sensoriales)

3. El 13 de febrero de 2020, la Comisión de Igualdad de Oportunidades en el Empleo (EEOC) emitió una carta sobre los reclamos del Demandante contra el Acusado, en la cual se autoriza a demandar. Así, el demandante ha agotado todos los Requisitos Procesales y Administrativos establecidos en las Leyes aplicables en esta queja.

4. Este Honorable Tribunal es el lugar adecuado para atender esta situación, ya que las causas de la acción tuvieron lugar en Puerto Rico. Las Prácticas Discriminatorias alegadas aquí fueron ejecutadas dentro del Distrito de Puerto Rico y el Departamento demandado está ubicado en Puerto Rico.

## II

### Partes

5. El Demandante Aneury Báez Eliza es mayor de edad, ciudadano de los Estados Unidos y reside en Urb. Villas el Recreo AA 4 Calle 7 Yabucoa, PR 00767

6. El Departamento de la Familia está ubicado en 185 Avenida Roosevelt Delano Roosevelt, San Juan, 00918.

7. Evelyn Velázquez Vega es subsecretaria del Departamento de la Familia y participe de mi destitución ilegal, negligente y discriminatoria. Ella deprivo al demandante de sus derechos bajo la ley federal actuando so color de autoridad.

8. Las co-demandadas identificadas en el epígrafe como Jane Doe y John Doe son personas co-causantes de los actos descritos y daños ocasionados a las demandante pero que al presente se desconocen sus respectivas identidades.

## III

### Hechos comunes a todas las Causas de Acción

9. El demandante nació el 12 de diciembre de 1979. Tiene 40 años.

10. El Demandante tiene una Discapacidad Visual conocida como Lebers Hereditary Opthics Neurophatic Syndrome (LHON), que consiste en una profunda perdida de Visión y es permanente.

11. La condición del Demandante limita sustancialmente su capacidad en las actividades principales de la vida tales como: ver, leer y movilidad general. Su visión esta significativamente restringida en comparación con las personas promedio.

12. El 29 de agosto de 2008 el Demandante comienza sus labores en el Departamento de la Familia, ocupando una posición de Supervisor en Trabajo Social I, en el Centro de Servicios Integrados de Caguas.

13. El 29 de agosto de 2008 el Demandante firmo un contrato de trabajo que establecía 6 meses (180 días) de periodo probatorio.

14. El demandante pasó el periodo probatorio y comenzó a trabajar con un salario mensual de $2,488.00.

15. Los deberes del Demandante incluían: supervisar a un equipo de Trabajadores Sociales que manejan casos de mediana y alta complejidad en áreas de protección social, violencia de género y asuntos de familia. Redactar y corregir Informes de investigación social y pericial, asiste en el manejo de casos de Tribunal, coordina y autoriza servicios de necesidad para las Familias que reciben los servicios, atiende asuntos administrativos, acorde a normas y procedimientos de la Agencia, leyes laborales entre otros.

16. El demandante pudo realizar las tareas esenciales de su trabajo. Al principio los Superiores estaban muy contentos con su desempeño.

17. Unas semanas después el Demandante presentó la documentación requerida para solicitar los Acomodos Razonables a los cuales tiene derecho para apoyar la eficiencia en el área de trabajo.

18. Tan pronto los demandados conocieron sobre la Discapacidad Visual del Demandante, decidieron crear un plan para desarrollar diferentes procesos de presión con el propósito de afectar el ambiente laboral.

19. La trama para la terminación del Demandante estaba compuesta por varios pasos y comportamientos. Parte de este Plan preconcebido se manejaba a través de la Supervisora Inmediata Wilma Ortiz quien sugería al Demandante, de manera hostil, que tal vez este no era el tipo de trabajo para él.

20. Para el 2009, varios métodos y estrategias sobre como la Agencia iba a hacer que el Demandante fallara se estaban estableciendo. Teniendo como propósito que este incumpliera en sus tareas.

21. Sin embargo, el Demandante fue capaz, las tareas que se le asignaron y poseía excelentes destrezas para el logro de su trabajo. En otras palabras, a pesar de su discapacidad, el Demandante pudo realizar los deberes esenciales de su cargo.

22. Además, como parte del plan para terminar con el Demandante, el demandado comenzó a presionarlo aumentando la cantidad de empleados a los que supervisaba, por tanto de manera directa le aumentaba la cantidad de casos, expedientes, informes, tareas administrativas y niveles de riesgo en el área de trabajo. Teniendo como conocimiento el demandado que la Tarea principal del Supervisor estaba ligada a la lectura. Lo cual comprendía y afectaba de manera directa la discapacidad del Demandante.

23. Además de lo anterior, el trabajo del Demandante fue objeto de un intenso escrutinio. Esto aunque al Demandante se le aumentara su carga de trabajo. Fue

bombardeado en múltiples tareas con la esperanza de que fallara.

24. Las solicitudes de Acomodo Razonable, al darle seguimiento por parte del Demandante lo que recibía como respuesta es que estaban extraviadas.

25. Como respuesta de la Agencia el Demandante recibió carta con la intención de ser despedido de su posición. Esto contrario a lo establecido en Ley. Cabe señalar que los Trabajadores Sociales del CSI de Caguas desarrollaron un escrito abogando por los derechos del Demandante.

26. En múltiples ocasiones y con el apoyo de empleados de la Acusada se completaron en varias ocasiones solicitudes de Acomodo Razonable.

27. Los demandados tampoco cumplieron con el proceso interactivo requerido por la Ley para explorar sobre el Acomodo que el Demandante necesita.

28. Para los años 2014 y 2015, como parte del hostigamiento y persecución se le continuaba asignando más supervisados al Demandante. Hacía mucho tiempo se había demostrado a través de datos estadísticos que el Demandante aunque era el único Supervisor con alguna Discapacidad era el de más carga de trabajo.

29. Aunque los demandados no proveyeron los Acomodos Razonables solicitado por el Demandante, utilizaban medidas en contra de este por tener más dificultad y utilizar más tiempo en las tareas administrativas ligadas a la lectura.

30. El Demandante, fue ridiculizado en múltiples ocasiones por no poder ver la computadora a simple vista y esta no tener el equipo asistivo necesario para completar la tarea. Además era el supervisor con más carga de trabajo y mayor cantidad de supervisados.

31. Como parte de las presiones indebidas y las reprimendas el Demandante fue el único Supervisor al que le cancelaron las vacaciones, debido a la Discapacidad Visual y por falta de los equipos asistivos para acelerar la entrada de datos a la computadora.

32. Durante los siguientes meses, el Demandante fue bombardeado con

constantes controles electrónicos, comunicaciones que lo presionaban para entregar documentos quejas injustificadas contra él y una supervisión excesiva.

33. Los procesos de comunicación no cumplían con las recomendaciones de los expertos para una persona con Discapacidad Visual. En todo momento enviaban instrucciones por correo electrónico con una letra regular, lo cual el Demandante no puede leer.

34. Los demandaoos consistentemente humillaban y engañaban al demandante preguntándole:  Tienes algún problema para leer este documento ? Además, en las reuniones de Supervisores y Directores, y empleados solicitaban, entre otros, que leyera,  lo que era motivo de risa y burla por parte de los compañeros. Este era un patrón de conducta intencional y discriminatorio.

35. El Demandante era constantemente acosado por sus supervisores debido a su conocimiento en cuanto a la Discapacidad Visual. Se le presionaba al Demandante para que usara una computadora sin los programas adaptados y a hacer el trabajo sin ningún equipo asistivo, secretaria y la colaboración de ningún compañero. Esta conducta era ya un patrón continuo y repetitivo en el trabajo.

36. En o alrededor del 2016 el Demandante se vio obligado a solicitar una investigación en la Oficina del Procurador de Personas con Impedimentos (OPPI). La investigadora (Moraima Guerrero) visitó el área de trabajo, convocado a reunión para llegar a acuerdos. A pesar de que la OPPI citó a los supervisores y directores de la parte demandada éstos se negaron a comparecer a la reunión.

37. Posteriormente, el Demandante instó una reclamación en Rehabilitación Vocacional. El Demandante fue sometido a múltiples evaluaciones por la Clínica de Baja Visión, este proceso desarrollo un informe con recomendaciones específicas para la Discapacidad del Demandante.

38. La investigadora de la OPPI visito el área de trabajo con el especialista en Asistencia Tecnológica el Sr. Jeffrey Colon, quien certifico las limitaciones en el área de trabajo para una persona con Discapacidad Visual y emitió sus

recomendaciones.

39. Se hace necesario resaltar que ante estos esfuerzos y recomendaciones desarrolladas por los expertos en el campo, la demandada tomó la decisión de no participar en el proceso de comunicación con la OPPI.

40. Ante la resistencia de la demandada en los procesos de Acomodo Razonable identificados como necesidad para el Demandante, la Oficina del Procurador de Personas con Impedimentos inició un proceso de Vista Administrativa en la OPPI.

41. Como reacción a la intervención de la OPPI dirigida por la solicitud de Acomodo Razonable, hubo un caos en las oficinas de la demandada. Los supervisores y directores estaban furiosos. La situación se convirtió extremadamente antagonista, muy hostil y agitado entre los supervisores y directores.

42. En el año 2016, la Directora Asociada le gritó al Demandante en una reunión de Supervisores y Directores por el Demandante haberse sonreído de forma amigable. Hasta le preparó un escrito negativo al expediente del Demandante por haberse sonreído, acto desarrollado como represalia ante los procesos solicitados por el Demandante.

43. Es necesario resaltar que los supervisores y directores de la demandada tomaron como costumbre humillar y gritarle al Demandante, esto inclusive en presencia de otros compañeros. De hecho, se impartieron instrucciones a los empleados de la demandada para que no le bridaran apoyo no colaboracion al demandante en sus tareas.

44. El 21 de junio de 2019, la demandada destituyó ilegalmente al Demandante de su Empleo de carrera mediando Discrimen al amparo de la Ley ADA, Represalias y Violaciones a Derechos Civiles y Constitucionales.

45. La demandada de forma intencional y maliciosa, llevó un proceso Administrativo en contra del Demandante con la intención de destituirlo, mediante el cual le privó de su derecho al debido proceso de ley en ambas modalidades,

Procesal y Sustantivo.

46.  La parte demandada privó al demandante de su empleo con la demandada mediando violaciones a las leyes estatales y federales que prohiben el discrimen en el empleo y en violación a sus derechos protegidos bajo las leyes federales y estatales aplicables mediando un procedimiento irregular, entorpecido y totalmente parcializado en su contra con el propósito de causarle daños.

47. La demandada se ha negado a entregarle al demandante la Resolución con la orden de destitución de 7 de junio de 2019 al Demandante y violar de forma crasa su Debido Proceso de Ley. El informe fue rendido por el Oficial Examinador Lcdo. Carlos Limardo, quien actuó de forma parcializada y arbitraria en contra del demandante.

48. La demandada notificó la Decisión de Destituir al Demandante sin notificar de su Derecho a Apelar.

49. La parte demandada llevó a cabo un proceso administrativo de destitución mediando intencion maliciosa, discrimen, represalias, persecusion selectiva, y están huérfanos de base legal, y al no garantizar al Demandante los Derechos de Igual Protección de las Leyes, Trato Igual, debido Proceso de Ley Modalidad Procesal, Sustantiva, y la Protección a su Dignidad. Además violaron el Derecho a la Confidencialidad en todo el Proceso.

50. La demandada celebró vistas informales en violacion al Debido Proceso de Ley del Demandante, toda vez que nunca se demostró Evidencia de las Alegadas Violaciones y no se le permitió conocer la Prueba en su contra, ni Confrontar la misma.

51. La demandada creó informes falsos alterando el protocolo e imputando violaciones a sabiendas que el demandante no cometió. Todo mediando falsedades, y violaciones crasas a sus propios Reglamentos y Politicas de la Agencia demandada.  Más aún, se utilizó un informe confidecial d eun caso de familia para adoptarlo y usarlo como excusa y pretexto para jusitficar la destitucion

ilegal.

# IV

## Primera causa de acción:

## La Ley de Estadounidenses con Discapacidades ("ADA") y la Ley Núm. 44

52. Las acusaciones contenidas en los párrafos 1 a 51  quedan incorporadas por referencia.

53. El demandante es un individuo calificado con una discapacidad en el sentido de Ley de Estadounidenses con Discapacidades de 1990 ("ADA")

54.El demandante estaba calificado, con o sin ajustes razonables, para realizar Las funciones esenciales de su trabajo.

55. La discapacidad del demandante limita sustancialmente su capacidad de ver, leer y general movilidad.

56. Los acusados organizaron un plan para obligar al demandante a renunciar y/o a provocar su terminación anticipada debido a su discapacidad visual en Violación de la ADA.

56. Los actos discriminatorios y en represalias en contra del demandante fueron ejecutadas de forma sistemática y contínua.

57. El demandante fue constantemente acosado y oprimido debido a su discapacidad.

58. El patrón de acoso fue progresivo con la intención de obligar al demandante creer que no pudo hacer el trabajo debido a su discapacidad.

59. El demandante fue monitoreado constantemente por su supervisor y perseguido por base de su discapacidad.

60. El demandante fue sometido a un ambiente de trabajo hostil y abusivo debido a su invalidez.

61. El demandante fue destituido ilegalmente por su discapacidad, acomodos razonables solicitados, y en represalias por los casos radicados ante las agencias administrativas descritas arriba.

62. El demandante solicito adaptaciones razonables pero los acusados intencionalmente y de manera discriminatoria se negó a acomodarlo.

63. La demandada se negó a participar en el proceso interactivo requerido por la Ley para explorar sobre el alojamiento que el demandante necesita.

64.El demandante fue objeto incesante de represalias, abuso, maltratato, humillaciones, hostigamiento, amonestaciones, burlas, terminación sobre la base de su conocimiento invalidez, por su discapacidad y haber ejercido las actividades protegidas por la ley.

65. Además, el acusado consideraba al demandante como una persona con una discapacidad que limita sustancialmente la actividad vital principal del trabajo. En otras palabras, el demandante tiene un físico impedimento que no limita sustancialmente una actividad importante de la vida laboral pero fue tratado por el demandado como constitutivo de dicha limitación.

66. Los acusados percibieron la discapacidad visual del demandante como si no pudiera cumplir con sus deberes y responsabilidades cuando, de hecho, fue perfectamente capaz de cumplir con los deberes esenciales de su empleo.

67.Como resultado de las acciones ilegales y discriminatorias de los acusados, el demandante ha sufrido lesiones irreparables, incluidas, entre otras, perdida de salario, beneficios y otras perdidas económicas, dolor y sufrimiento emocional, angustia mental, humillación, vergüenza y otras lesiones intangibles por las cuales debe ser compensado. Los daños del demandante se calculan en un monto no menor a un millón de dólares. (1,000.000.00).

## V

### Segunda causa de acción: represalias de ADA y Ley local 115

68. Los hechos contenidos en los párrafos 1 a 67 se incorporan aquí por referencia.

69. Los acusados tomaron represalías contra el demandante porque el solicito acomodo razonable y radico varias reclamaciones administrativas descritas en los párrafos anteriores.

70. El Demandante tiene conocimiento de multiples empleados que forman parte de la Agencia que han tenido situaciones criminales, han tenido grillete electronico, han tenido situaciones de violencia domestica, han tenido casos por abuso de maenores e inclusive le han removido los menores y continuan trabajando para los Demandados.

71. Los Demandados planificaron y tuvieron como propósito el destituir al Demandante ya que este habia presentado quejas por violaciones a la Ley ADA en la OPPI, EEOC e inclusive ya habían intervenciones (hasta el 2019) por parte de las Agencias.

72. Estas acciones del demandante se consideran actividades actividad protegida bajo la ADA. La Ley 44 y la Ley 115.

73.    Como resultado de las acciones ilegales y discriminatorias de los acusados, el demandante ha sufrido lesiones irreparables, incluidas, entre otras, perdida de salario, beneficios y otras perdidas económicas, dolor y sufrimiento emocional, angustia mental, humillación, vergüenza y otras lesiones intangibles por las cuales debe ser compensado. Los daños del demandante se calculan en un monto no menor a un millón de dólares. (1,000.000.00).

## VII

**Cuarta Cuarta de Accion – Ley Federal de Derechos Civiles**

**42 USC 1983**

74. Los hechos contenidas en los párrafos 1 a 67 se incorporan aquí por referencia.

75. La co-demandada Evelyn Velazquez Vega actuando so color de autoridad violo derechos establecidos en la Constitucion y en las leyes federales que protegen al demandante.

76. La actuacion de destitucion ilegal y discriminatoria de parte de la codemandada privó al demandante de los derechos garantizados por la ley y Constitucion incluyendo violaciones crasas al debido proceso de ley.

77. El demandante se reserva el derecho de enmendar la demanda para traer a personas responsables de estso actos una vez de rescubra la verdadera identidad de los mismos.

78. Como resultado de las acciones ilegales y discriminatorias de los acusados, el demandante ha sufrido lesiones irreparables, incluidas, entre otras, perdida de salario, beneficios y otras perdidas económicas, dolor y sufrimiento emocional, angustia mental, humillación, vergüenza y otras lesiones intangibles por las cuales debe ser compensado. Los daños del demandante se calculan en un monto no menor a un millón de dólares. (1,000.000.00).

79. El demandante solicita además daños punitivos.

**VIII.**

**Quinta Causa de Accion: Articulo 1802, 1803 - Destitución Ilegal**

80. Los hechos contenidas en los párrafos 1 a 51 se incorporan aquí por referencia.

81. La destitucion del demandante es ilegal.

82. Como resultado a la destitucion ilegal, el demandante ha sufrido intensos daños y angustias mentales los cuales se estiman en una suma no menor de $1,000,000.00.

**IX.**

## Sexta Causa de Acción: difamación

83. Los hechos contenidas en los párrafos 1 a 51 se incorporan aquí por referencia.

84. Los acusados anunciaron falsamente que el demandante era una persona poco ética, que él es un manipulador, que no tiene valores, que tiene amantes en el trabajo, que es inmoral, que es alcohólico, que habla con personas de residenciales públicos, que está poniendo es descredito el nombre de la agencia Departamento de la Familia .

85. Estas declaraciones difamatorias fueron publicitadas constantemente por los acusados de manera verbal y en informes escritos.

86.  Que estas declaraciones falsas eran difamatorias, abusivas, emitidas de mala fe y no promovió ninguna razón comercial legitima.

87. Las acciones intencionales y negligentes de los acusados violan los artículos 1802 y 1803 del código Civil de Puerto Rico.

88. Daño emocionales del demandante, incluido el dolor y el sufrimiento infligidos él y su reputación por daños se estiman en una cantidad no menor a $500.000.00.

POR LO TANTO, el demandante reza de esta Honorable Corte para:

1) Ordene a los demandados que paguen por los daños económicos, como el pago atrasado, pago anticipado y pérdida de beneficios causados a los demandantes por sus acciones ilegales en una cantidad no menor de $50,000.00.

2)  Otorgue al demandante daños  y prejuicios por un monto no menor de $2, 000,000.00 por la angustia emocional, la angustia mental y el dolor y el sufrimiento causados como resultados de acciones ilegales y discriminatorias de los acusados.

3) Otorgar daños punitivos al demandante de acuerdo con la Ley y duplicar los daños de conformidad con la Ley.

4) Otorgue al demandante el pago de indemnización por su destitucion ilegal por uan suma no menor de $1,000.000.00

5) Ordene la reposicion en el empleo.

6) Otorgue el intereses, costas, gastos y honorarios de abogado.

7) Que otorgue cualquier otro remedio que el demandante tenga derecho.

8) El demandante solicita juicio por jurado.

RESPETAMENTE SOLICITADO.

FIRMADO HOY 8 DE MAYO DE 2020 POR DERECHO PROPIO:

F/ANEURY BAEZ ELISA
Urb. Villas el Recreo AA 4
Calle 7 Yabucoa, PR 00767
Telefono 787-248-5397